J-A02002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEFFERY LEE MCWILLIAMS | : | |
| | : | |
| Appellant | : | No. 1111 WDA 2016 |

Appeal from the Judgment of Sentence November 20, 2015
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000203-2013

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 17, 2018**

Jeffery Lee McWilliams appeals from the judgment of sentence of seventy-two hours to six months incarceration imposed following his non-jury trial conviction for driving under the influence and related offenses.  We affirm.

We adopt the following recitation of facts set forth in the trial court's order adjudging Appellant guilty:

> Officer [Benjamin] Thorn testified that he was parked . . . when he observed a vehicle driving without headlights. Understandably, this immediately attracted his attention and he pulled out intending to stop the vehicle. On or about the same time, the vehicle turned from the road on to a side road without executing a turn signal. Officer Thorn testified he saw no other vehicles on the road. In pursuit, he followed [Appellant]'s vehicle which, when he turned on to the side street, was stopped in the middle of the road with the engine running.
>
> Investigating the situation, Officer Thorn approached [Appellant]'s vehicle and saw [Appellant] in the driver's seat.

There was no one else in the vehicle. Approaching [Appellant], he encountered a strong odor of alcohol, slurred speech by [Appellant] and glassy eyes. The Officer suspected intoxication.

Field sobriety tests confirmed that impression and [Appellant] was arrested and transported to a local hospital where a blood alcohol test was administered. The results showed a level of intoxication by [Appellant] three times the legal limit of .221%.

Trial Court Opinion, 8/28/15, at unnumbered 2-3.[1]

This matter has a protracted history at both the trial court and appellate levels. Although a suppression hearing was held on October 21, 2013, this matter did not proceed to trial until August 27, 2015. Appellant was sentenced on November 18, 2015, with the sentencing order docketed two days later. Post-sentence motions were filed on November 30, 2015.[2] The motions were denied on June 23, 2016, thus exceeding the expiration of the applicable 120-day timeframe. **See** Pa.R.Crim.P. 720(B)(3)(a). However, a notice of appeal was filed within thirty days of that order, and this appeal is therefore timely. **See Commonwealth v. Khalil**, 806 A.2d 415 (Pa.Super. 2002) (failure of clerk of courts to issue an order denying

---

[1] We refer to this document as the trial court opinion, as the judge filed, on September 1, 2016, a document adopting this order as its Pa.R.A.P. 1925(a) opinion.

[2] In **Commonwealth v. Green**, 862 A.2d 613, 614 (Pa.Super. 2004), we held that post-sentence motions must be filed within ten days of the oral announcement of sentence, not the docketing date of the sentencing order. Here, the tenth day fell on Saturday, and the motion was therefore timely.

post-sentence motions by operation of law constitutes breakdown in operation of trial court).

The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement, and adopted its previously-filed order as its opinion. Appellant thereafter filed a motion to remand the record to the trial court, due to the absence of transcripts during the post-sentence motions period. We denied that order, and extended the briefing schedule. Following multiple extensions, Appellant filed his brief and the matter is ready for our review of his claims:

I. Was the evidence sufficient to convict the accused of driving under the influence of alcohol?

II. Was the verdict of the trial judge against the weight of the evidence and should the matter be remanded for the trial judge to weigh the evidence

> (1) where the appellant was denied the opportunity for a counseled argument post[-]sentence by lack of transcript available to counsel appointed post[-]sentence and the motion was denied by operation of law and
>
> (2) where evidence suggests that the police officer could not explain the position, distance, and view to a solid black truck that he saw operating without headlights and turning left onto a side road that the vehicle, that [Appellant] was in was a different vehicle a light colored tan and marron [sic] two[-]tone truck, where the trial court concluded that [Appellant] was sincere in his belief that someone had added something to his drink to make him appear incapacitated, where [Appellant] had inexplicable marks and bruises, disheveled and ripped clothing, that

were not noted by the police officer at the time of the arrest, and immediately before the approach of the police officer the appellant heard a loud noise of a black truck, and [A]ppellant had not driven the vehicle but entered the passenger side, and other related facts?

III. Should the evidence of the BAC test result be suppressed as an unconstitutional search and seizure or the fruit thereof?

IV. Was [Appellant]'s right to due process of law denied in that he was denied the opportunity to subpoena witnesses, the Court proceeded without having appointed counsel before sentencing and before trial, where [A]ppellant sought to take *pro se* action to obtain witnesses and preserve his right and interest on the record, but was not allowed by the court to do so?

Appellant's brief at 23.

Appellant's first claim challenges the sufficiency of the evidence supporting the DUI verdict. Our standard of review is well-settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the

evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Britton*, 134 A.3d 83, 86 (Pa.Super. 2016) (quoting

*Commonwealth v. Caban*, 60 A.3d 120, 132-33 (Pa.Super. 2012)).

Appellant neglects to identify any particular element that the Commonwealth failed to establish beyond a reasonable doubt. Moreover, Appellant does not contest that all reasonable inferences, when drawn in light most favorable to Commonwealth, establish that he is guilty of DUI. Instead, for his sufficiency claim, Appellant focuses on the fact that Officer Thorn testified at the preliminary hearing, suppression hearing, and trial that the vehicle he observed driving without headlights was a black pickup truck. Likewise, the Commonwealth's charging documents indicated that Appellant's truck was black. Appellant introduced evidence showing that his vehicle was a two-toned light beige and maroon truck.

The trial court agreed that the officer's testimony was incorrect on this point. Appellant asserts that this concession renders the evidence insufficient:

> What is "sure" and certain is that the truck that the office[r] saw moving on the roadway was a solid black truck. The officer was "as sure about that as [he was] about the rest of his testimony." What is also sure is that the truck that [Appellant] was in was certainly not a solid black truck. He drove a "two[-]tone" truck. One's common experience tells any observer, that the frequency of the sighting of two-tone vehicles in these days on the highway is a highly unusual event. That the officer was absolutely sure that the truck he saw on the road was black, the color of which [w]as important to add to the Information by the Commonwealth in its "To Wit" section, calls into question that this is simply an

- 5 -

unimportant mistake. Indeed, it is an important symptom of a false identification of the truck by the officer that confirms [Appellant]'s testimony that there was another black truck that the officer saw in motion causing him to follow it.

Appellant's brief at 48 (citations omitted).

Appellant's argument goes to the weight of the evidence, as it does not implicate the proof of any element of DUI and merely suggests that the trial court erred in crediting Officer Thorn's testimony. We note that the trial court addressed this issue in his order finding Appellant guilty:

There is, however, one detail which appeared incorrect. Specifically, the Officer testified at the preliminary hearing that the vehicle he stopped at 2 a.m. was black (solid black when pressed on the issue by Defense counsel) in color. This seems (based on the evidence) to be clearly incorrect. The Defense argues that this failure to recall the color of the vehicle "proves" that the Officer, in fact, stopped the wrong car.

Reviewing this, we believe this testimony by itself proves little. In fact, in a situation such as a DUI stop in the middle of the night where the Officer testifies that he observes the car, follows it, stops it, identifies the driver, suspects driving under the influence, performs field sobriety tests which confirms his impression, and then obtains a blood alcohol test which further confirms his evaluation his failure to identify the color of the vehicle with all of this going on is minor. This becomes even more true when one considers that the vehicle was impounded so that the Officer actually had it in his possession and the license plate and registration were confirmed. Frankly, given all of that, remembering the color of the vehicle would have been the last thing on the Officer's mind. In and of itself, it raises no real doubt as to the Officer's credibility.

Trial Court Opinion, 8/28/15, at unnumbered 3-4.

This passage demonstrates that the trial court properly considered the officer's mistaken testimony to be relevant to his credibility in general,

- 6 -

and that the incorrect testimony in this respect did not diminish the credibility of his testimony in other respects. For sufficiency purposes, the judge, sitting as finder of fact, was entitled "to believe all, part or none of the evidence." **Britton**, **supra** at 86. Therefore, Appellant's claim that this incorrect testimony "calls into question" the rest of the evidence is incorrect, insofar as it clearly did not in the view of the fact-finder.

Additionally, Appellant fails to address why a mistaken identification of his vehicle would warrant relief. Even if this Court were to accept that Officer Thorn mistakenly identified Appellant's vehicle for one he had observed earlier, the fact remains that Appellant was in physical control of a vehicle that was stopped in the middle of a road with its engine running.[3] We therefore find that Appellant is not entitled to relief.

We now address Appellant's weight claim, which was raised in a post-sentence motion in a boilerplate averment. Appellant experienced difficulties in obtaining the trial transcripts, and, following the expiration of the 120-day post-sentence period, the Commonwealth filed a motion seeking their denial by operation of law. As a result, the motion was denied by operation of law and, since the trial court adopted its earlier order as its Pa.R.A.P. 1925(a)

---

[3] Appellant analogizes this case to a situation wherein a police officer receives a report of a prowler, but stops and arrests an individual of a completely different race. In that case, however, the mistaken identification would go to innocence of prowling. Here, the mistake would go only to the validity of the initial seizure, which Appellant did not challenge.

opinion, it did not explicitly rule on this claim. Appellant states that, upon remand, the trial court must consider the fact that Appellant's vehicle "is a two-tone light and marron [*sic*] vehicle." Appellant's brief at 54. While recognizing that the trial court already explained its reasoning on this point, Appellant claims that the "officer never admitted there was an error in the color or that the vehicle on the roadway was a two-toned light beige and marron [*sic*] truck[.]" ***Id***. He also challenges the officer's recollection of times, noting that Officer Thorn testified that it took Appellant about fifteen minutes to locate documentation, but that it is more likely that this timeframe included the field sobriety tests. Finally, Appellant emphasizes that his testimony, which the trial court deemed "sincere," established that someone put something in his drink at the bar earlier in the evening, and the next thing he remembers was waking up in his passenger seat.

Our standard of review is as follows.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa.Super. 2014) (cleaned up).

Our standard of review makes clear that we do not review the underlying question of whether the weight of the evidence supported the verdict, but rather the trial court's discretion in ruling on the claim. Therefore, had this case proceeded to a jury and the trial court failed to address the weight claim, we would be compelled to remand. In *Commonwealth v. Ragan*, 653 A.2d 1286 (Pa.Super. 1995), we took that step, writing:

In the instant case, the trial judge has not provided us with his thinking on the matter of the weight of the evidence. On page two of his opinion, the trial judge addresses Ragan's sufficiency of the evidence challenge. A sufficiency of the evidence challenge, however, does not involve the same inquiry as a weight of the evidence challenge. Thus, we are left without an explicit trial court ruling on an issue that is addressed to the sound discretion of the trial court.

Appellee urges us to presume that the trial court examined the weight of the evidence. It is true that the trial judge discussed

and apparently credited much of the evidence introduced at trial. Based on this discussion, appellee would have us assume that the trial judge weighed the evidence and found that the verdict did not shock his sense of justice. In the absence of any indication that the trial court even noticed the weight of the evidence claim, however, any such assumption would look less like a review of the trial court's exercise of discretion and more like an appellate court's weighing of the evidence. We would be moving  dangerously close to crossing the weight of the evidence "line in the sand" drawn by the Supreme Court. In an area of the law where the Supreme Court has taken such pains to clearly delineate the boundaries of the appellate and trial court functions, we decline the invitation to again blur the distinction.

*Id*. at 1288 (citations omitted).

Unlike ***Ragan***, the instant conviction followed a bench trial.  We think that distinction warrants different treatment, as the trial court implicitly denied the claim by finding Appellant guilty.  We acknowledge that ***Ragan*** declined to adopt a presumption that the judge addressed the claim: "In the absence of any indication that the trial court even noticed the weight of the evidence claim . . . any such assumption would look . . . like an appellate court's weighing of the evidence." ***Id***.   In a non-jury trial, however, the judge, by definition, "noticed" the weight of the evidence claim by finding Appellant guilty beyond a reasonable doubt in the first place.  Our Supreme Court has stated that, in the jury trial context, the trial judge abuses his discretion in ruling on a weight claim if he acts as an additional juror:

A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror.

*Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000).

In the bench trial context, the trial judge acts as the jury. We have recognized that weight of the evidence challenges are cognizable, if not odd in the sense that the judge presumably followed the law the first time. "Although we recognize that weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that her verdict shocked her own conscience." *Commonwealth v. Walsh*, 36 A.3d 613, 622 n.5 (Pa.Super. 2012).

However, the fact that such claims are cognizable does not mean that remand is warranted for the trial court to explain that which is evident. The trial court rejected the weight claim by rendering a verdict against Appellant in the first place, and implicitly denied the same claim by failing to rule on Appellant's post-sentence motion. Finally, the trial court elected to rely on its original verdict instead of authoring a new opinion. Thus, the trial court had the opportunity to revisit Appellant's version of events, and elected not to grant a new trial. We thus find that a remand is not warranted.[4] *Id*. (finding that weight claim following non-jury trial was not properly preserved and therefore waived, but would not lead to relief in any event since trial court found the testimony credible).

---

[4] Therefore, to the extent that Appellant claims that he was "denied the opportunity" to litigate his weight of the evidence claim due to the absence of transcripts, we disagree. He fully litigated that matter at trial, and the judge rejected his arguments.

- 11 -

Having determined that a remand is unnecessary, we add that the trial court offered a full explanation in its trial court opinion of why it ignored the competing facts. Therein, the court summarized Appellant's defense and explained why it declined to credit that version:

[Appellant] offered that he was drugged and/or "alcohol was shoved down his throat" earlier at the bar where he had been socializing. As a result, [Appellant] was unconscious and/or not in possession of his senses from 11:30 p.m. when he put his last beer down on the counter at the bar until he woke sitting in the passenger seat of his vehicle at 2:15 a.m. (according to his car clock). Awakening from this stupor, [Appellant] testified he almost immediately observed a black truck pass him and go on down the road. He contends the Officer "stopped" a stationary truck (his) which had not committed any violations. Essentially, that the Officer stopped the wrong car is the defense argument.

In discussing that defense, at the outset [Appellant] can not state that he was not driving the car from the bar to its parked location. He does not know as he was "out of it." Notwithstanding, [Appellant] goes on to offer a theory that he may have been assaulted and beaten at the bar. He entered in the record photos of bruises on his shoulder area, elbow, and foot to show that he may have been assaulted and drugged. Instead, only alcohol was found in his system. He requested and (to the credit of the Police Department) they accomplished a much more comprehensive lab test than a simple blood alcohol which might have been conducted by the Pennsylvania State Police Lab. Because of [Appellant]'s version, they fairly attempted to confirm that something other than alcohol caused his intoxication. This could not be confirmed despite the fact that the test actually administered to [Appellant] tested for several hundred substances. [Appellant] also testified he was missing money even though his keys and his credit cards were on or near his person.

In response to this, we ask ourselves a simple question - namely, does the Officer's error combined with [Appellant]'s version take what appears to us to be an innocent mistake on an otherwise minor error by the Officer and transform it into a reasonable doubt. The answer is no.

- 12 -

Trial Court Opinion, 8/28/15, at unnumbered 4-6.

Appellant's third claim states that he is entitled to a remand for further proceedings due to the decision in **North Dakota v. Birchfield**, 136 S.Ct. 2160 (2016) (holding warrantless blood tests cannot be justified as a search incident to arrest). Pursuant to **Birchfield**, which was issued during the pendency of these proceedings, the police may not threaten enhanced punishment for refusing a blood test as a means to obtain consent. Decisions from this Court have been remanded for further proceedings pursuant to **Birchfield** when a suppression motion raising a challenge to the voluntariness of consent was raised at the trial court level. **See Commonwealth v. Evans**, 153 A.3d 323, 324 (Pa.Super. 2016) (remanding for hearing where Evans had filed a suppression motion claiming that his consent to blood draw was coerced by "informing him that if he did not submit to extraction and subsequent testing of his blood, he would face stiffer criminal penalties.") (bracketing omitted).

We decline to remand for further proceedings on this issue, as Appellant failed to raise any challenge to his consent in the trial court. **See Commonwealth v. Moyer**, 171 A.3d 849, 855 (Pa.Super. 2017) ("Instantly, [Moyer] failed to challenge the warrantless blood draw at any stage of the litigation prior to her *nunc pro tunc* post-sentence motion. Thus, she is not entitled to retroactive application of **Birchfield**."). Although

Appellant filed a suppression motion, he did not raise any challenge therein to his consent to BAC testing. Motion to Suppress, 9/11/13 at 1.[5]

A defendant seeking suppression of evidence must set forth the specific theories and grounds for relief. Pa.R.Crim.P. 581(D); *cf. Com. v. Dixon*, 997 A.2d 368, 374–75 (Pa.Super. 2010) (*en banc*) (holding Commonwealth met its burden of proof in suppression motion where Dixon's motion alleged that suppression of physical evidence was required due to invalidity of stop, as opposed to manner in which evidence was seized following the stop). Therefore, the fact that Appellant challenged the blood draw based on contamination did not preserve the unrelated theory of coerced consent. *Birchfield* has no bearing on the issues he actually pursued. Therefore, this claim was raised for the first time on appeal, and Appellant is not entitled to a remand for further proceedings. *See Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa.Super. 2014) (*en banc*) ("To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below.").

Appellant's final issue is an undeveloped claim that his "right to due process of law [was] denied" based on his inability to subpoena witnesses

---

[5] The challenge to the blood draw was that it "was done in a manner that could cause contamination and therefore is both unreliable and inadmissible."

for his trial, the recusal of the judge who heard the suppression hearing, and other asserted irregularities. Appellant's brief at 64.

Appellant was represented by three separate attorneys throughout trial. On July 11, 2014, Appellant's retained counsel, Paul Gettleman, Esquire, filed a motion to withdraw, which was granted on July 16, 2014. A public defender was appointed, who later filed a motion to withdraw, asserting that Appellant complained that "counsel is not representing him properly, that counsel is not making enough time for the preparation of the case for trial . . . [and] that [Appellant] wishes to represent himself because counsel will not proceed in the manner that [Appellant] wants him to proceed." Motion to Withdraw, 10/6/14, at 1. That motion was apparently withdrawn following a hearing, as counsel filed a second motion to withdraw, which stated, "After a Colloquy in court, defendant indicated that he wanted to be represented by this counsel[.]" Motion to Withdraw, 2/27/15, at 1. Counsel stated that the attorney-client relationship was still broken, and that Appellant wished to represent himself. That request was granted.

On April 2, 2015, the trial judge recused himself and appointed Josh Camson, Esquire, to represent Appellant. He, too, sought to withdraw, stating that Appellant unequivocally wished to proceed *pro se*, and noted that Appellant "made various accusations as to counsel's loyalty, work ethic, and ability to handle the case." Motion to Withdraw, 8/17/15, at 1. On the day of trial, the trial court conducted a hearing and determined that Appellant waived his right to counsel.

Appellant does not specify how his due process rights were violated. Appellant was obviously aware of his insistence that he proceed *pro se*, and the order setting his trial date was entered on May 15, 2015. Therefore, Appellant had over three months to prepare, and we note that he presented the testimony of one witness in addition to himself. Therefore, Appellant's undeveloped argument does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2018